18937

T. J. DIXON, Appellant, v. The STATE of South Carolina et al., Respondents

(168 S. E. (2d) 770)

*Lofton M. Fanning, Esq.,* of Orangeburg, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Emmet H. Clair, Assistant Attorney General,* of Columbia, and *Julian S. Wolfe, Solicitor,* of Orangeburg, *for Respondents,*

July 3, 1969.

BUSSEY, Justice.

This is an appeal from an order of the Honorable Louis Rosen, resident judge of the First Judicial Circuit, dismiss-

ing after a full hearing a writ of habeas corpus and remanding appellant-prisoner, Dixon, to the South Carolina Penitentiary where he is serving several sentences.

Dixon was convicted at the September 1966 term of the General Sessions Court for Orangeburg County on charges of armed robbery and assault and battery with intent to kill. He was sentenced by Judge Eppes, presiding judge, to a term of fifteen years on the armed robbery count and also to ten years on the assault charge, the latter sentence to run concurrently with the former. The charges against him arose out of the armed robbery of a place of business, at gun point, on the night of December 6, 1965, one employee of the place of business being shot and wounded in the course of the robbery.

Subsequently to the foregoing sentences and while Dixon was still confined in the Orangeburg County jail, he allegedly came into possession of a pistol, and by threatening the jailer with the weapon forced the jailer to release him and other persons, stole an automobile and effected his escape. He was recaptured promptly and at a special term of General Sessions Court, December 1, 1966, he pled guilty to indictments charging him with escape, assault with intent to kill and murder, and grand larceny. He was then sentenced to one year on the escape charge, seven years consecutively on the assault charge, both sentences to run consecutively to his earlier sentences, and on the grand larceny charge he was sentenced to a term of five years, concurrently with all other sentences. He is thus faced with the service of twenty-three years.

The petition for a writ of habeas corpus alleged various and sundry grounds for relief, but did not assert the relief to which petitioner supposed himself entitled. The petition is dated August 11, 1967. A hearing was granted by an order dated December 19, 1967, and the hearing was held on January 16, 1968. The order denying relief and dismissing the writ is dated March 14, 1968.

The petition did not specifically allege any inadequacy or incompetency of his appointed counsel, Mr. Zack E. Townsend of the Orangeburg Bar, who represented Dixon at his jury trial in September 1966, but upon the hearing the only real issue developed with respect to such trial was whether he was, at that trial, represented by adequate and competent counsel. With respect to such issue, Judge Rosen found as a fact that Dixon was represented by counsel in a proper and competent manner. Such issue having been decided adversely to the appellant, we are limited in our review to. the determination of whether there was evidence to sustain the findings made by the trial judge. *Ross v. State,* 250 S. C. 442, 158 S. E. (2d) 647 (1967).

At the time of the December 1965 crime, Dixon was a married, family man, and a resident of Orangeburg County. He was not personally known to either of the two. employees of the business establishment present at the time of the robbery, but was somewhat later identified by both of them. While these employees were not able to immediately identify the perpetrator of the crimes, for reasons or facts not clearly reflected in the trial record, Dixon was early regarded as the prime suspect in the case. From the time of the December 1965 crime until Dixon was apprehended in Augusta, Georgia in the latter part of May 1966, he was for the most part absent from Orangeburg County. He knew, however, long before his apprehension that he was sought in connection with the crime and managed by flight on one occasion to avoid arrest in Orangeburg County.

His counsel, Mr. Townsend, was appointed on the 13th day of September 1966, the second day of the first term of the Court of General Sessions for Orangeburg County following his arrest. The case proceeded to trial on the 15th day of September, no motion for continuance being made. Upon the trial, Dixon's defense was mistaken identity and alibi, he contending that he left Orangeburg by bus on the early morning of December 4th, two days prior to the crimes, for Spartanburg, where he remained until December 27th. Ac-

cording to him, he returned on that date to Orangeburg County for one day, but went immediately back to Spartanburg where he remained for two additional weeks. His testimony was to the effect that he was having an illicit affair with one Susie Lee Dawkins in the City of Spartanburg, and that while he did not sleep there, he was in her home every day and every night from the morning of December 4th until December 27th. Offered in corroboration of his alibi testimony was a statement, to the effect that an aunt of his, could she have been present, would have testified to the fact that she put him on a bus for Spartanburg on the night of December 3, 1965, and also a letter purportedly received by Dixon while in jail, a few days before trial, from Susie Lee Dawkins to prove that such a person did exist. Appointed counsel knew of Dixon's contention but admittedly made no effort to contact Susie Lee Dawkins prior to the trial.

Upon the habeas corpus hearing, the only evidence adduced tending to prove inadequacy or incompetency on the part of appointed counsel was his failure to follow up the alleged alibi witness, Susie Lee Dawkins. Mr. Townsend was also appointed to represent Dixon in the habeas corpus proceeding but the petition did not allege any incompetency on his part in any respect, and not even Dixon contends that Townsend was inadequate or incompetent in any other particular. Mr. Townsend took the stand in the habeas corpus proceeding and testified that, in retrospect, he thought he had been derelict in his duty, but that at he time of the trial he was convinced that Susie Lee Dawkins was a fictitious person. Dixon had been unable to produce the envelope containing the letter allegedly written by Susie Lee Dawkins, which fact was a natural ground for the belief on the part of counsel that the alleged alibi witness was a fictitious one.

Upon the hearing an affidavit was presented from one Idella Dawkins, a daughter of Susie Lee Dawkins, dated January 15, 1968, more than two years after the commission of the crimes, in which she swore that Dixon was in Spar-

tanburg at the time of the crimes; that he came there prior to December 6, 1965, and remained there until December 27, 1965. Her affidavit, however, contains no explanation as to how or why she remembered the precise dates of Dixon's visit to Spartanburg more than two years prior to the date of the affidavit.

Susie Lee Dawkins, the adulterous consort of Dixon, appeared and testified at length in the proceeding. She testified categorically that Dixon was in Spartanburg on the night of the crimes, December 6, 1965. She, however, gave no explanation of her reason for remembering that precise date, more than two years before. It is noteworthy that she was quite confused as to whether she was in South Carolina or in New Jersey at the time of the September 1966 trial of Dixon, her testimony thereabout indicating that she could not keep even years straight in her mind, let alone days. She gave as her reason for being sure that she saw Dixon on December 6, that she saw him every day while he was in Spartanburg. She did not anywhere testify as to the date of Dixon's arrival in Spartangurg, or as to why or whether she had any reason to remember the date of his arrival. It would seem to logically follow that the probative value, if any, of her testimony is dependent entirely upon the veracity of Dixon's testimony as to when he allegedly arrived in Spartanburg.

The credibility of both Susie Lee Dawkins and her daughter Idella was a matter for the determination of the trial judge. His order contained no express findings as to the credibility of either of these witnesses. While their testimony may be in all other respects credible, an analysis thereof clearly shows that the credibility of their testimony as to the precise date of December 6, 1965 is dependent upon the veracity of Dixon himself as to just when he arrived in Spartanburg. Inherent in the finding of fact below that Dixon was adequately and competently represented is a finding that the testimony of these parties was insufficient to add anything to the testimony of the defendant himself, and

thereby give rise to a reasonable doubt in the minds of the jury on the issue of alibi, since the probative value of the testimony of these two witnesses depended entirely upon the veracity of Dixon himself as to the time of his arrival in Spartanburg.

Mr. Townsend, in retrospect, indicts himself for dereliction of duty in not following up the supposed alibi witnesses in September 1966. We agree with him, at least in retrospect, that he should have further investigated or pursued the matter. On the other hand, there is in the record before us no reason to suggest or believe that his failure to do so worked in the slightest degree to the prejudice of Dixon or his rights. Dixon was a fugitive for more than five months before apprehension, and when counsel was informed of the alleged alibi witnesses, more than nine months had elapsed. There is nothing in the record to suggest that these alleged alibi witnesses would have had any more knowledge or recollection in September 1966 of the actual date of the arrival of Dixon in Spartanburg than they did upon the somewhat later habeas corpus hearing. We conclude that Dixon has shown no prejudice and is entitled to no relief as to his sentences for armed robbery and assault and battery with intent to kill arising out of the December 1965 occurrence.

With respect, however, to his subsequent pleas of guilty and the sentences imposed in connection therewith at the December 1966 term of court, we are of the view that Dixon is entitled to relief. While the indictments there involved are contained in the record, the full facts of how the alleged crimes were committed are not contained in the record. As above pointed out, he pled guilty to escape, assault with intent to kill and murder, and grand larceny. He apparently made his escape from jail by the use of a pistol and made his getaway in a stolen automobile, but none of the details appear in the record. The transcript of the proceedings at the time of such pleas and sentences is in the record and it appears therefrom that Mr. Townsend,

who had previously represented Dixon in his jury trial, was asked by Judge Eppes to talk with Dixon and advise him of his rights, but it does not clearly appear that Mr. Townsend was actually appointed to represent him, or that Mr. Townsend, if appointed, so understood.

Mr. Townsend was not present at the time of the pleas. In the course of the colloquy between the judge and Dixon, he acknowledged that the judge had asked Mr. Townsend to talk with him, and that Mr. Townsend had explained to him his rights. Dixon, in response to several questions, expressed his willingness to waive the absence of Mr. Townsend and have the court proceed in the absence of counsel. The judge did not explain the nature of the several charges to which Dixon was pleading guilty, but did ask him if he understood that the court could give him, in connection with such charges, twenty more years on top of his previous sentences, to which question Dixon replied in the affirmative. The judge also asked him if he understood what he was pleading guilty to and if he was pleading guilty because he was guilty, to which Dixon replied in the affirmative.

It is clear, we think, that Dixon, who had completed the eleventh grade in high school, knew that he was entitled to the presence and representation of counsel at the time of entering his pleas. The questions asked by the trial judge at the time of the pleas and the answers given by Dixon amply support the finding of the court below that Dixon voluntarily waived his right to the presence and assistance of counsel. The question still remains, however, whether his guilty pleas were voluntarily made with full understanding of what the several pleas connoted and their respective consequences. Dixon, of course, knew factually whether or not he was guilty of the conduct which gave rise to the several charges. While he acknowledged that Mr. Townsend had previously talked with him and advised him of his rights, the extent of such counsel and advice does not appear. Dixon, in the absence of being fully advised, most likely had no intelligent opinion as to whether the admitted facts were or were not

sufficient to support precisely all of the charges to which he was pleading guilty.

Under the circumstances of this case, the right to the presence of counsel having been waived, we are of the view that Dixon was entitled to a more precise explanation, by the court, of the several charges against him to the end that he might intelligently determine whether or not his admitted conduct was sufficient to warrant him pleading guilty to all of the same. A proper inquiry for counsel, if present, and for the court was whether the admitted facts warranted and supported a plea to the charge of assault with intent to kill and murder, as possibly opposed to some lesser degree of assault. Since the facts are not before us, we mean to intimate no opinion thereabout and point to such simply as an issue that may very well have arisen had Dixon been represented by counsel, or had fully explained to him precisely what the particular plea connoted and its probable resulting consequences.

In considering whether Dixon had full understanding of what his several pleas connoted and their respective consequences, we call attention to Code Section 17-553.2, which reads as follows:

"When closely connected offenses considered as one.—In determining the number of offenses for the purpose of imposition of sentence, the court shall treat as one offense any number of offenses which have been committed at times so closely connected in point of time that they may be considered as one offense, notwithstanding under the law they constitute separate and distinct offenses."

The factual details not being before us, we intimate no opinion as to the applicability or effect of the quoted code section. Assuming, however, its applicability, there is nothing in the record to indicate that such was called to the attention of Dixon, or whether or not such was perchance, considered by the trial judge. Knowledge and understanding, or lack thereof, on the part of Dixon as to any rights inuring to him under said section, when applied to the facts of

the case, were quite germane to the question of whether or not he fully understood the legal consequences of his several pleas.

Under all of the circumstances reflected by the record, we are of the view that Dixon did not intelligently and understandingly enter the several guilty pleas at the December 1966 term of court. Such pleas and resulting sentences are, accordingly, vacated.

The judgment of the lower court denying relief in connection with the September 1966 conviction and sentences is affirmed, but its judgment with respect to the December 1966 pleas and sentences is reversed and the cause remanded to the end that Dixon be granted a new trial. In conclusion, we point out that Dixon on this appeal has been most ably represented by other counsel appointed after it developed that there was an issue as to the competency of Mr. Townsend.

Affirmed in part, reversed in part, and remanded.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.